IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MITCHELL LEE LAM, ) | |
|     Petitioner, ) | Civil Action No. 7:22cv00007 |
| ) | |
| v. ) | |
| ) | By:  Elizabeth K. Dillon |
| HAROLD W. CLARKE, Director, ) |      United States District Judge |
|     Respondent. ) | |

**MEMORANDUM OPINION**

Mitchell Lee Lam, a Virginia inmate proceeding through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a judgment against him imposed by the Albemarle County Circuit Court on May 3, 2018.  The respondent has filed a motion to dismiss.  Upon review of the pleadings herein and the records from the state court, Lam's petition fails because the Supreme Court of Virginia has ruled on the issues raised herein, and that court's decisions are neither based on an unreasonable determination of facts nor contrary to or an unreasonable application of federal law.  Therefore, Lam's petition must be dismissed.

I.    BACKGROUND

**A.  Procedural Background**

A Grand Jury sitting for the Albemarle County Circuit Court indicted Lam for aggravated malicious wounding in violation of Virginia Code § 18.2-51.2, abduction with intent to defile in violation of Virginia Code § 18.2-48, and burglary of a dwelling in the nighttime in violation of Virginia Code § 18.2-89.  Following a three-day trial, on July 19, 2017, a jury convicted Lam of the burglary and of the lesser-included offenses of malicious wounding and abduction.  The jury then recommended a total sentence of 22 years—10 years for the malicious wounding, 7 years

for the abduction, and 5 years for the burglary. The trial court ordered a presentence report and sentencing guidelines. The guidelines recommended a sentence between 5 years, 3 months and 11 years, 8 months, with a midpoint of 9 years, 9 months. R. at 375.[1] Following a hearing on March 15, 2018, notwithstanding the guideline recommendation, the trial court imposed the sentence recommended by the jury.

In a *per curiam* opinion dated May 29, 2019, the Court of Appeals denied Lam's petition for appeal. Then, a three-judge panel denied his appeal on September 30, 2019. The Supreme Court of Virginia refused his petition for appeal on May 22, 2020. Lam did not file a petition for certiorari with the United States Supreme Court. He filed a petition for habeas corpus in the Supreme Court of Virginia, alleging ineffective assistance of counsel, but the court denied and dismissed his petition on December 6, 2021. He timely filed the current § 2254 petition on January 5, 2022, raising the same issues raised in his state habeas:

1. Ineffective assistance of counsel in allowing improper testimony of bad acts by:

    a. Eliciting testimony on cross-examination of a prior domestic incident between Lam and J.D.;

    b. Not moving to strike J.D.'s testimony about the prior incident; and

    c. Not objecting to prosecution questions to J.D. and Lam about the details of the alleged prior break-in, questions to J.D.'s son about prior violence between J.D. and Lam, including threats to kill, and questions to Henshaw about hearing that Lam was stalking J.D.

---

[1] The record from the Supreme Court of Virginia combined and organized all pleadings from the criminal trial and appeal with the state habeas petition and forwarded the same to this court under the case *Lam v. Commonwealth*, Record No. 191398. Citations are to that combined record at the page number typed in the lower left corner of the page.

2. Ineffective assistance of counsel in responding to the prosecutor's objection to portions of Lam's testimony.

3. Ineffective assistance of counsel in failing to exclude Dr. Liu's testimony for bias.

**B. Factual Background**

The facts of the case, in the light most favorable to the Commonwealth as the prevailing party, are best summarized by the appellate court:

> On the evening of February 20, 2016, [J.D.] attended a friend's birthday party. She consumed two or three glasses of wine at the party, but she was not intoxicated to the extent that her memory was impaired. [J.D.] left the party at approximately 2:00 a.m. on February 21, 2016 with some of her friends, including Anthony Henshaw. As they were leaving, Henshaw expressed his concern at the number of missed calls [J.D.] had on her phone. [J.D.] explained that she and [Lam] had been in a relationship which she ended about four to six weeks before the party. During the weeks between the end of the relationship and the party, [Lam] repeatedly appeared at her home or work, had followed her in her car, had yelled obscenities at her, and had threated to kill her. [J.D.] changed the locks on her doors out of concern for her safety. After Henshaw learned about [Lam's] behavior, he accompanied [J.D.] home.
>
> [J.D.] and Henshaw went to sleep in a basement bedroom in [J.D.'s] house. She awoke during the night, and Henshaw informed her that someone was at the basement door and was shining a light through a window. When the noises outside stopped, the two went back to sleep. [J.D.] awoke later to a booming sound upstairs and then she heard [Lam] quickly descending the basement steps from upstairs. [J.D.] tried to call the police, but [Lam] grabbed her phone from her hands. [J.D.] recalled that Henshaw was no longer in the bed but she did not know where he was. [Lam] pulled [J.D.] off the bed and then threw her back on it. [Lam] ripped [J.D.'s] underwear off her body and stated: "I should show him how to fuck you, you stupid whore, you bitch." [J.D.] struggled against [Lam] and he pulled her to the floor. [Lam] pushed [J.D.] onto the steps, hurting her back, and then forced her to climb to the top of the steps. When they reached the top of the steps, [Lam] pushed against [J.D.'s] chest as he said, "I want to kill you bitch, fuck you." The next thing [J.D.] could remember was waking up in her bed with Henshaw asking her if she was okay. [J.D.'s] vision was blurry, and her head hurt severely. Henshaw told [J.D.] that she was bleeding. He took her

> to his car, drove her to a neighbor's house, and called the police. [J.D.] suffered a fractured skull, a traumatic brain injury, and other injuries during the attack. Neurosurgeon Dr. Kenneth Liu testified that [J.D.'s] injuries were not consistent with an accidental fall down the steps. Following [Lam's] arrest, [J.D.] received several letters from [Lam] in which he asked her not to testify against him.

*Lam v. Commonwealth*, No. 0534-18-2, slip op. at 2–3 (Va. Ct. App. May 29, 2019).

Without question, there were many conflicts in the evidence. Henshaw, called as a defense witness, testified, contrary to J.D.'s testimony, that he and J.D. engaged in foreplay in the bed. When he heard someone coming down the stairs, he hid. He remained hiding during the confrontation between J.D. and the other person, did not see what happened, although he heard the yelling and name-calling, and then he heard a thump-thump. Then he heard a concerned-sounding voice say, "Dude, come out, come out, come help me, she's hurt." Trial Tr. Vol. 2, 475. After the person left out the basement door, Henshaw came out and saw J.D. on the bed, her head bleeding. Lam's theory of defense was that:

> he and J.D. had not broken up prior to February 20, 2016, that they were living together, that he did not break into the house, that he came home after spending the night with his other girlfriend and found J.D. heavily intoxicated and in bed with another man and they argued, that he took a pair of underwear from J.D.'s dresser and tore them, and that he had left the basement and was upstairs when he heard J.D. fall.

*Lam v. Clarke*, No. 210335, slip op. at 4 (Va. Dec. 6, 2021).

During the three-day trial, the jury heard from seven witnesses for the Commonwealth (three in rebuttal) and twelve witnesses for the defense, including Lam. They reviewed medical records, photographs of J.D.'s injuries (including friction burns on her thigh and waist where the underwear had been torn from her body), and photographs of a large muddy footprint on the basement door and on the side door through which he made entry. After deliberating several hours, they returned with verdicts of guilty for burglary, guilty of malicious wounding (rather

4

than aggravated malicious wounding), and guilty of abduction (rather than abduction with intent to defile).

## II.  DISCUSSION

Lam's petition is timely, and he properly exhausted his state court remedies before filing this petition. There are no solely procedural limitations to the court's consideration of the merits of Lam's claims, consistent with the standard of review in habeas cases and the law applicable to claims for ineffective assistance of counsel.

**A. Habeas Standard of Review**

Federal courts reviewing constitutional claims adjudicated on the merits in state court may grant relief on such a claim only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision is contrary to federal law only if it reaches a legal conclusion that is directly opposite to a Supreme Court decision or if it reaches the opposite result from the Supreme Court on facts that are materially indistinguishable from the facts of the Supreme Court case. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

A state's decision is an "unreasonable application" of federal law only if the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The question is not whether a federal court believes the state court's decision is incorrect, but whether the decision was unreasonable, which is "a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Likewise, the federal court must presume that the state court's factual findings are correct, and this presumption can be overcome only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Again, to grant habeas relief, the federal court must find more than just an incorrect determination of facts, as "unreasonable determination of the facts" is "a substantially higher threshold." *Schriro*, 550 U.S. at 473.

**B.  Standard for Evaluating Claims of Ineffective Assistance of Counsel**

When reviewing counsel's performance, courts apply a highly deferential standard. A petitioner must show that (1) counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment *and* (2) that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Petitioner must meet both prongs of the test, as neither deficiency alone nor prejudice alone will suffice.

Deficient performance requires a showing that counsel's performance fell below "an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 688. The reviewing court must presume that counsel rendered adequate decisions and that all significant decisions were made in the exercise of reasonable judgment. *Id.* at 690. In reviewing counsel's strategy decisions, the reviewing court must not rely upon "the distorting effects of hindsight." *Id.* at 689–90. The *Strickland* standard is "doubly deferential" in the context of a habeas petition, because the deferential standard of review required by § 2254 overlaps with the deferential standard under *Strickland*. *Woods v. Etherton*, 578 U.S. 113, 117 (2016). In other words, federal courts on habeas review are to give the benefit of the doubt to both the state court and the defense attorney. *Id.* "Surmounting *Strickland's* high bar is never an easy task," but establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is "all the more difficult." *Harrington,* 562 U.S. at 105.

To establish prejudice under *Strickland*, a petitioner must show that there was "a reasonable probability that the outcome of the proceedings would have been different," which means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Habeas corpus is "a guard against extreme malfunctions in the state criminal justice system," not a substitute for ordinary error correction. *Harrington*, 562 U.S. at 102–03.

## C. Lam's Claims

The proper standard for habeas review under § 2254(d), as discussed in subsection A above, will be used to evaluate the Supreme Court of Virginia's decision on each of Lam's claims for ineffective assistance of counsel.

### 1. Allowing/eliciting testimony of prior bad acts

Lam's first complaint in this claim is that counsel ineffectively elicited "prior bad acts" testimony on cross-examination of JD and then failed to move to strike her answer. While trying to have JD authenticate a picture of Lam at the Albemarle General District Courthouse, presumably based on information from his client, counsel asked J.D. "Did you ever go to court with Mr. Lam?" Trial Tr. vol. 1, at 226. J.D. responded, "I had to go against him for the Christmas tree." *Id.* Counsel again asked, "Any time, any time in February did you go to court with him?" and J.D. answered "No, because he had a drug incident, I think." *Id.*

As the state habeas court properly noted, choosing whether and how to cross-examine a witness is a tactical matter committed to the sound discretion of counsel. *Sallie v. North Carolina*, 587 F.2d 636, 640 (4th Cir. 1978). The defense theory of the case was that Lam and J.D. were still involved in a relationship; photographic evidence that she had loaned him the tie he was wearing and went to court with him on February 16, less than five days before the events on which Lam's charges were based, furthered that theory. That his questions, with the benefit

7

of twenty-twenty hindsight, might not have been the very best possible approach, does not render counsel's performance deficient. Ineffective assistance of counsel is judged by a standard of reasonableness under *Strickland*, not perfection. As the Fourth Circuit Court of Appeals has previously noted while addressing this type of issue, "Although [appellant] persuasively argues that he did not receive the best possible representation at trial, *Strickland* only requires adequate counsel judged by a standard of reasonableness in light of the prevailing norms of practice." *Hunt v. Nuth*, 57 F.3d 1327, 1333 (4th Cir. 1995).

Nor was counsel's performance deficient in failing to move to strike her answers to his questions. Even if J.D.'s answers were improper prior bad acts testimony, J.D. had already mentioned "the Christmas tree incident" during direct examination, without going into any details, and counsel reasonably could have determined that moving to strike the testimony would unduly call the jury's attention to it and make the answer seem more important. "It is well established that failure to object to inadmissible or objectionable material for tactical reasons can constitute objectively reasonable trial strategy under *Strickland*." *Humphries v. Ozmint*, 397 F.3d 206, 234 (4th Cir. 2005).

The state habeas court also reasonably determined that Lam was not prejudiced by his attorney's line of questions. This decision is reasonable, first and foremost, because prior bad acts are not always inadmissible. While evidence of prior bad acts is not admissible to show that the defendant has a propensity to engage in bad acts, such evidence is admissible for other purposes. *Angel v. Commonwealth*, 704 S.E.2d 386, 397 (Va. 2011). For example, where motive or intent is at issue, evidence of other offenses is admissible if it shows "the conduct or attitude of the accused toward his victim, establishes the relationship between the parties, or negates the possibility of accident or mistake." *Moore v. Commonwealth*, 278 S.E.2d 822, 824

(Va. 1981). Further, the more closely that the prior act is related in time, pattern, or state of mind, the greater the relevance of such evidence. *United States v. Hall*, 858 F.3d 254, 260 (4th Cir. 2017). Lam's defense was that J.D. accidentally fell down the stairs because she was drunk. Prior incidents of violence towards J.D. during their brief, tumultuous relationship were relevant to negate the accident theory.

For the same reasons, counsel's performance was not deficient when he failed to object to prosecution questions to J.D. and to Lam about the prior "Christmas tree incident" (a prior burglary), questions to J.D.'s son about Lam's prior threats to kill J.D., and to Henshaw's testimony that he went to J.D.'s that night because he was concerned for her safety because of what he had heard about the prior incidents. All the evidence to which Lam objects was relevant to show Lam's intent, Lam's state of mind, and absence of accident. Adequate performance does not require counsel to make futile objections. *United States v. Mason*, 774 F.3d 824, 833 (4th Cir. 2014); *Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005). Nor is there any improper prejudice to the defendant when admissible evidence is introduced at trial.

Because the state habeas court's determination of facts and application of law were reasonable, the court cannot grant relief on this claim.

**2. Ineffective response to prosecutor's objection to portions of Lam's testimony**

During Lam's direct testimony, Lam stated that he found J.D.'s cell phone outside and laid it on the bench seat on the porch the night of the incident. Counsel asked, "So after that, go on, what did you do at that point?" Trial Tr. vol. 2, at 540. Lam responded with a long narrative about what he did, why he did it, what he thought, who he thought J.D. was with, what he thought he saw, and in hindsight, what he might have seen. Four uninterrupted pages into the narrative, Lam said, "I heard testimony today from Henshaw that said he was in the backroom. I

9

don't know that to be true." *Id.* at 544. The trial court admonished him that he could not comment on the testimony, that he just had to testify about what happened that night. *Id.* Lam continued his narrative for another page. The following statement drew an objection from the Commonwealth's Attorney: "I was cheating too, you know, so I really wasn't that mad over this except for the fact that it was Dustin Walton[2] because it wasn't the first time we had these issues where I caught her doing something or I caught her at Food Lion doing . . . ." *Id.* at 545.

The trial court sustained the objection and again instructed Lam to stick with what happened that night, which had been counsel's original question. *Id.* at 545–546. Defense counsel argued that Lam was trying to explain what was going on in his mind that night, and that those thoughts were relevant. The court disagreed. *Id.* Lam now argues that he was trying to address the fact that he was not jealous as the prosecution sought to paint him. Pet'r's Mem. in Supp. of Pet. at 21, Dkt. No. 1-1. Further, he maintains that the trial court's ruling prevented him from rebutting the evidence that had been introduced against him, namely that he followed J.D., showed up repeatedly at her home and work, yelled obscenities at her when she picked up her children, and threatened to kill her several times. *Id.* at 22. Lam states that counsel was ineffective in failing to argue that he was rebutting the Commonwealth's evidence.

The state habeas court found that Lam failed to show either deficient performance or prejudice. The court noted that Lam had already testified that he was not jealous and that he had had sexual relationships with other women while he was dating J.D. As the habeas court noted, "The trial court did not limit petitioner's testimony until petitioner began to testify that he 'caught' J.D. engaging in some misconduct at some point in the past." *Lam v. Clarke*, slip. op. at

---

[2] Lam thought he saw Dustin Walton in the basement, with whom he believed J.D. to be having a relationship; by all accounts, Dustin Walton was not there that night; the only person with J.D. was Anthony Henshaw.

10. Testimony about what J.D. was doing at Food Lion does not rebut evidence that Lam was jealous-natured, nor does it rebut J.D.'s testimony that Lam followed her car, showed up at her work repeatedly, yelled obscenities at her when she was picking up her children, and had threatened to kill her. When the trial court advised Lam to stick to the night in question, the court's statement must be considered in the context in which it was made, immediately after Lam commented on Henshaw's testimony, while Lam was answering the question "What did you do next?" The trial court's ruling did not prevent Lam from denying his jealousy, nor would it prevent him from denying the other actions J.D. testified about, in response to a proper question.

The trial court's ruling preventing Lam from testifying about what J.D. did at Food Lion was proper. Counsel argued a reasonable theory to try to allow Lam to continue the narrative. Arguing that it was proper rebuttal would not have any logical appeal, and as discussed in the prior subsection, failing to make a frivolous objection is not deficient performance, and there cannot be ineffective assistance of counsel without deficient performance. The state habeas court's decision is based upon a reasonable determination of facts and a reasonable application of the law. Accordingly, the court cannot grant relief on this claim.

### 3. Failure to exclude Dr. Liu's testimony

Lam's final claim is that counsel should have objected to Dr. Liu being an expert because of his romantic involvement with J.D. Admissibility of expert testimony is within the sound discretion of the trial court, and the court's decision will not be reversed absent an abuse of discretion. *Castillo v. Commonwealth*, 827 S.E.2d 790, 812 (Va. Ct. App. 2019). The criterion for qualifying as an expert is having requisite knowledge of a subject matter that is beyond the knowledge and experience of ordinary laypersons. *Id.* Dr. Liu, a graduate of Berkeley and of the medical school at the University of Southern California, completed a residency and

fellowship in neurosurgery, before joining the University of Virginia medical hospital. He specializes in vascular neurosurgery and had previously qualified as an expert in neurosurgery in other courts in the Commonwealth. Accordingly, as the state habeas court found, the trial court did not abuse its discretion in admitting Dr. Liu as an expert witness.

The potential bias of the witness, because of his relationship with J.D., is a matter for the fact-finder, in this case the jury. Bias goes to credibility and weight of the evidence, which are matters for the jury to determine. *Parrish v. Commonwealth*, 567 S.E.2d 576, 578–79 (Va. Ct. App. 2002). Counsel reasonably could have decided, as a matter of strategy, that objecting to the doctor's testimony would be futile, and that cross-examining the doctor about his bias would be the more successful approach. His cross-examination elicited not only the relationship, but that such relationships between employees might be frowned upon and that doctor-patient relationships are not permitted.

Lam was not prejudiced by counsel's actions regarding Dr. Liu. The main thrust of Dr. Liu's testimony was that J.D.'s memory problems and hearing loss were permanent sequelae of her brain injury, since she had not recovered after more than a year. *The jury apparently rejected that testimony when it returned a verdict for malicious wounding instead of aggravated malicious wounding.* The only difference between aggravated malicious wounding, which carries twenty years to life in prison, and malicious wounding, is the element of sustaining a permanent injury. The jury did not find a permanent injury beyond a reasonable doubt. Likely, Dr. Liu's bias is a major reason.

The state habeas court reasonably determined that Lam failed to show deficient performance or prejudice from his handling of Dr. Liu. The decision was based upon a

reasonable determination of facts and a reasonable application of the law. Lam has no remedy in federal habeas for this claim.

### III. CONCLUSION

When issuing a final order adverse to a § 2254 petitioner, the court must issue or deny a certificate of appealability. Fed. R. Gov. § 22254 Cases 11(a). A certificate of appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c). The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Lam has not made such a showing in this case.

For the reasons stated above, the court will grant the respondent's motion to dismiss, dismiss the petition for writ of habeas corpus, and deny a certificate of appealability.

An appropriate order will be entered.

Entered: February 9, 2023.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge